FILED
9/9/2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TOP TOBACCO, L.P. and REPUBLIC TOBACCO LP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-04460 |
| | ) | Judge Maria Valdez |
| MIDWESTERN CASH AND CARRY LLC; | ) | |
| NUSRAT CHOUDHRI; BASHIR CHAUDRY; | ) | |
| ZUBAIR KHAWAJA; MUZAFAR ALI; | ) | |
| YALE GAS AND FOOD, INC.; | ) | |
| SOUTHERN GAS AND FOOD INC.; | ) | |
| SOUTH CHICAGO ONE, INC. | ) | |
| d/b/a CLARK GAS AND FOOD; | ) | |
| MUDANJIANG BASES IMPORT | ) | |
| & EXPORT LLC d/b/a MUDANJIANG | ) | |
| BASES CO., LTD.; and TANG QIWEN | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY MEMORANDUM OF LAW IN
## SUPPORT OF DEFENDANTS CHOUDHRI, CHAUDRY,
## KHAWAJA, AND ALI'S MOTION FOR SUMMARY JUDGMENT

Richard J. Prendergast, Esq.
Michael T. Layden, Esq.
Jennifer M. Ryder, Esq.
RICHARD J. PRENDERGAST, LTD.
111 W. Washington St., Suite 1100
Chicago, Illinois 60602
(312) 641-0881

## TABLE OF CONTENTS

Argument ...........................................................................................................1

Plaintiffs Rule 56.1 Filings Should be Discarded ..........................................2

    A.  The Individual Defendants Did Not Actively, Willfully and Knowingly
        Participate in Any Alleged Infringement ...........................................3

          1.  Nusrat Choudhri ...................................................................4

          2.  Muzafar Ali ..........................................................................8

          3.  Bashir Chaudry .....................................................................9

          4.  Zubair Khawaja ..................................................................11

    B.  There Is No Evidence Demonstrating "Willful Blindness" on the Part of the
        Individual Defendants .....................................................................13

    C.  Summary Judgment is Appropriate for the Additional Reason that
        All of the Individual Defendants' Conduct Was Within the Scope
        of Their Corporate Duties ...............................................................16

    D.  The Court Should Disregard Plaintiffs' Meritless Technical
        Arguments .......................................................................................18

          1.  The Individual Defendants' Motion for Leave to File Their Answer
              Should Be Granted ..............................................................18

          2.  The Affidavits of Individual Defendants Are Proper .........19

          3.  The Individual Defendants Provided Sufficient Information
              Regarding Profits Derived From TOP Products .................20

          4.  The Denial of the Individual Defendants' Motion to Dismiss
              Does Not Require the Denial of Their Motion for Summary
              Judgment ............................................................................21

Conclusion ......................................................................................................22

i

## TABLE OF AUTHORITIES

**CASES**                                                                       **PAGE(S)**

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)...................................................................................................21

*Bank of Ill. v. Allied Signal Safety Restraint Sys.*
75 F.3d 1162 (7th Cir.1996) ....................................................................................20

*Cady v. Miss Paige, Ltd.*
No. 02 C 4867, 2004 WL 1144044 (N.D.Ill. Apr. 30, 2004)..............................................2

*Cichon v. Exelon Generation Co.*
401 F.3d 803 (7th Cir. 2005) ...........................................................................2, 3

*Ciomber v. Coop Plus, Inc.*
527 F.3d 635 (7th Cir. 2008) ...............................................................................2

*C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*
626 F. Supp. 2d 837, 857 (N.D. Ill. 2009) .......................................................16

*Dangler v. Imperial Machine Co.*
11 F.2d 945 (7th Cir. 1926) ...............................................................................3

*David v. Caterpillar, Inc.*
324 F.3d 851 ..................................................................................................20

*Gibson v. City of Chicago*
910 F.2d 1510, 1520 (7th Cir.1990) ...............................................................21

*Lorillard Tobacco Co. v. S & M Central Service Corp.*
No. 03 C 4986, 2004 WL 2534378 (N.D. Ill, Nov. 8, 2004)..........................................15

*Malec v. Sanford*
191 F.R.D. 581 (N.D. Ill. 2000)...........................................................................2

*Menard v. Wells Manufacturing Co.*
No. 03-C8313, 2007 WL 2688445 (N.D. Ill. Sept. 11, 2011) .........................................21

*Microsoft Corp. v. Rechanik*
249 Fed. Appx. 476 (7th Cir. 2007).....................................................................13

*Midwest Imports, Ltd. v. Coval*
71 F.3d 1311 (7th Cir.1995) ...............................................................................3

*Miller v. A.H. Robins Co., Inc.*
766 F.2d 1102 (7th Cir. 1985) .......................................................................................20

*Nat'l Acceptance Co. of Am. v. Pintura Corp.*
418 N.E.2d 114 (Ill. App. Ct. 1981) ................................................................................2

*Prior v. City of Chicago*
No. 07 C 2479, 2010 WL 431470 (N.D. Ill. February 01, 2010) ....................................19

*Roe-Midgett v. CC Servs., Inc.*
512 F.3d 865 (7th Cir. 2008) ..........................................................................................19

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*
18 F.3d 502 (7th Cir. 1994) ............................................................................................15

## Argument

Summary Judgment should be granted in favor of the Individual Defendants. The parties agree that, in order to hold the Individual Defendants liable in this case, the Plaintiffs must prove that they actively, willfully and knowingly participated in the infringement alleged. As demonstrated in their opening motion, the undisputed evidence demonstrates that the Individual Defendants (1) did not actively, willfully and knowingly participate in the alleged infringement and, in fact, (2) could not have actively, willfully and knowingly participated in the alleged infringement because none of them could discern the difference between authentic and counterfeit TOP rolling papers. Moreover, the undisputed evidence shows that any actions taken by the Individual Defendants occurred while they were acting within the scope of their corporate duties.

In their Response to the Individual Defendants' Motion for Summary Judgment[1] ("Response"), Plaintiffs essentially concede that they cannot prove knowledge or willfulness on the part of the Individual Defendants and instead urge the Court to draw the unsupported inference that the Individual Defendants actively and willfully engaged in the alleged counterfeiting scheme. The facts forbid such an inference. While Plaintiffs rely heavily on the corporate titles and ownership interests of each Individual Defendant in an attempt to convince the Court to infer their personal involvement in the alleged infringement, these types of facts are insufficient to survive summary judgment. Plaintiffs argue that there is significantly more evidence demonstrating the active and knowing involvement of the Individual Defendants but, in a transparent effort to create issues of fact where none exist, they can only offer distortions of the

---

[1] Plaintiffs' Response shall be cited as "Plf. Br.". Additionally the Individual Defendants' Statement of Uncontested Facts shall be cited as "SUF", and the Individual Defendants' Response to Plaintiffs' Statement of Additional Facts shall be cited as "Def. to Plf. SUF"

evidentiary record along with facts suggesting nothing more than the Individual Defendants acting within the scope of the corporate duties.

Unable to avoid summary judgment on the merits, Plaintiffs resort to pursuing entirely frivolous technical arguments that should be rejected outright for the reasons stated *infra*. Under the governing principles of law and the facts of this case, none of the Individual Defendants knowingly, willfully, or actively participated in the manufacture or sale of counterfeit TOP rolling papers, and for that reason, summary judgment for each of the Individual Defendants should be granted on all counts.[2]

**Plaintiffs' Rule 56.1 Filings Should Be Disregarded.**

Plaintiffs' efforts to create issues of material of fact where none exist arise largely out of their refusal to comply with Local Rule 56.1 ("Rule 56.1"). Rather than providing "concise" responses to the Individual Defendants' Statement of Undisputed Facts, Plaintiffs have provided the Court with unsupported denials and evasive arguments prefaced by a wholly improper four-page "Introduction" that is replete with legal argument in blatant violation of Rule 56.1.[3] As this Court's standing order provides, "[f]ailure to abide by the Local Rules may result in the Court striking briefs, disregarding statements of fact, deeming statements of fact admitted, or denying summary judgment. *See, e.g., Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Malec v. Sanford*, 191 F.R.D. 581, 582-87 (N.D. Ill. 2000) (comprehensive overview of summary judgment procedure in the Northern District of Illinois)." *See* Standing Order of

---

[2] Illinois follows a nearly identical standard as the Lanham Act with respect to the personal liability of corporate officers. *See Nat'l Acceptance Co. of Am. v. Pintura Corp.*, 418 N.E.2d 1114 (Ill. App. Ct. 1981). Summary judgment for the Individual Defendants is equally appropriate on both Plaintiffs' federal and state tort claims; therefore, both are addressed together herein.

[3] Specifically, paragraphs 11, 14, 16, 18, 20-23, 25-26, 29-31, 34, 36 fail to cite specific references to the record that adequately contradict the Individual Defendants' proffered undisputed facts. It's well established that the non-moving party must respond by admitting or denying each and every factual statement proffered by the moving party with specific references to the record, and failure to do so will result in all well-supported facts to be deemed admitted by the court. *Ciomber v. Coop Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008).

Magistrate Judge Maria Valdez, Motion Requirements (a). Ignoring this caution from the Court, Plaintiffs Rule 56.1 filings (including both their Response to the Individual Defendants' Statement of Uncontested Facts and their Statement of Additional Facts) state legal conclusions rather than material facts and are littered with improper argument.[4]

As Courts in this Circuit have noted, "[t]he Seventh Circuit repeatedly has sustained the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the local rules and regularly upholds strict enforcement of Rule 56.1." *Cady v. Miss Paige, Ltd.*, No. 02 C 4867, 2004 WL 1144044 (N.D. Ill. 2004). *Citing Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir.1995) (citing cases); *see also Cichon*, 401 F.3d at 809–10 ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed."). Given the Plaintiffs' outright failure to abide by the requirements of Rule 56.1, the Court should deem each fact set forth in Defendants' Statement of Uncontested Facts admitted, disregard Plaintiffs' Statement of Additional Facts and grant summary judgment in favor of the Individual Defendants.

### A. The Individual Defendants Did Not Actively, Willfully and Knowingly Participate in Any Alleged Infringement.

Initially, Plaintiffs acknowledge that *Dangler v. Imperial Machine Co.*, 11 F.2d 945 (7th Cir. 1926) controls the substantive area of law on this motion. Plaintiffs, however, argue that they have presented the Court with sufficient facts to meet the standard set forth in *Dangler* – a special showing that the Individual Defendants willfully and knowingly participated in the claimed infringement. Plaintiffs are wrong. As demonstrated by the Individual Defendants'

---

[4] In addition to Plaintiffs' improper introduction, several of Plaintiffs' responses to the Individual Defendants Statements of Uncontested Facts contain impermissible legal arguments and conclusions. (See ¶¶ 10-14, 16-18, 21-22, 25-29, 32, 34, 36-37).

opening motion, the Individual Defendants did not willfully and knowingly participate in any infringement.

While Plaintiffs chastise the Individual Defendants for contending that Plaintiffs rely solely on the corporate titles and ownership interests of the Individual Defendants in attempts to show knowing participation, Plaintiffs proceed in their Response to base a substantial portion of their argument on little more than those titles and ownership interests. The remaining "facts" that Plaintiffs rely upon amount to distortions of the record, corrected *infra*.

### 1. Nusrat Choudhri

Plaintiffs distort the evidentiary record as to Nusrat Choudhri. Beginning with their first proffered fact, Plaintiffs state "Defendant Choudhri admitted he: (i) has sold *at least* "one package" of product allegedly bearing the TOP trademark. (Plf. Br. at 6)(emphasis added). The interrogatory Plaintiffs cite to support this proposition, however, actually states that "[s]ince 2006, [Choudhri] has sold *about* one package of 24 booklets up until the present time." (emphasis added). Notwithstanding Plaintiffs' artful modification of the record, selling about one package of 24 booklets of TOP rolling papers over a six year period falls woefully short of the "special showing" requirement contemplated in *Dangler* and its progeny. This misstatement, however, is Plaintiffs' best effort to dispel the following facts outlined in Individual Defendants' opening motion, all of which demonstrate Choudhri's lack of personal participation in the sale or manufacture of counterfeit TOP products at MCC:

- Choudhri did not personally order TOP tobacco products. (SUF ¶ 11, 12).

- Choudhri delegated the responsibilities of purchasing all tobacco-related products to an employee. *Id*.

- Choudhri delegated the responsibilities of maintaining records of all tobacco-related products to an employee. (SUF ¶ 16).

4

- Choudhri does not work behind the tobacco counter at Midwestern and is not in charge of the physical distribution of any tobacco products. (SUF ¶ 11, 12).

- Choudhri has no involvement in determining when and from whom to buy cigarette rolling papers. *Id*.

In the face of these facts, Plaintiffs are left to impute Choudhri's personal participation in the alleged infringement because "(ii) [MCC] display[s] TOP rolling papers behind the glass and on the sales counter; (iii) [Choudhri] manages [MCC]; (iv) [Choudhri] is familiar with the process by which [MCC] orders cigarette papers; and (v) [Choudhri] is the direct supervisor of Khalid Jamal, MCC's keeper of records." (Plf. Br. at 6-7). These general statements provide no basis to deny summary judgment. The record shows that Choudhri did not (1) know about the counterfeit TOP papers; (2) control the purchase or sale of TOP papers; or (3) personally manufacture or sell the TOP papers. (SUF ¶ 14, 11, 12). The fact that MCC displayed TOP papers behind the tobacco counter (like every tobacco product in the warehouse) or that Choudhri has a minimalistic understanding of how his employees order TOP papers fails to provide adequate grounds of personal liability.

Furthermore, Plaintiffs, as they have previously, improperly contend that a 2010 transaction between MCC and Country Bright is indicative of Mr. Choudhri's personal participation in the purported counterfeiting scheme. Plaintiffs state that "there is every indication that Defendant Choudhri knew he was buying and selling TOP cigarette rolling papers that were not authentic." (Plf. Br. at 7). When describing this "major admitted instance of trafficking counterfeit goods," however, Plaintiffs are forced to use the nouns "MCC" and "MCC employees" instead of "Mr. Choudhri."[5] This is no mere oversight. Plaintiffs know that (1) Mr. Choudhri was not physically present at this transaction; (2) Mr. Choudhri did not have any

---

[5] Plaintiffs also had the benefit of full discovery and deposed the employees at MCC that <u>did</u> have responsibility for tobacco related purchases and sales. Nonetheless, the record is devoid of any evidence that Mr. Choudhri authorized or encouraged the alleged infringing activity.

personal knowledge of this purchase until receiving a copy of the Complaint; and (3) Mr.

Choudhri did not authorize any employee to make this transaction.  (SUF ¶ ¶ 13, 14).  These

facts have not and cannot be refuted.

Because Plaintiffs' cannot demonstrate that Mr. Choudhri had even a scintilla of

knowledge of this transaction, they instead conclude that it was Mr. Choudhri who "instructed

his employee, Mr. Jamal, to fabricate a record for this barter transaction." (Plf. Br. at 7).  The

deposition testimony of bookkeeper Khalid Jamal, cited by Plaintiffs to support this assertion,

plainly refutes their version of events:

> Q. Did [Nusrat Choudhri] **give you any directions** on what it was you were
> supposed to create?
>
> A. **No**.
>
> Q. Do you recall what it was that he asked you to do that led you to create this
> document?
>
> A. Probably he wants to know all the data, whatever, I mean, we purchase the
> rolling paper products from whom, from whom we purchase the rolling papers.
>
> Q. Do you have a recollection, as you sit here today, of what Mr. Nusrat Choudhri
> asked you to prepare?
>
> A. No, **he didn't ask me to prepare**. He just want to know like, I mean, whom
> we purchase all the rolling papers in these -- these years, from –

(Def. Res. to Plf. SUF ¶ 11).  It is not reasonable to infer from this testimony that Mr. Choudhri

"instructed his employee, Mr. Jamal, to fabricate a record for this barter transaction."  Plaintiffs

have distorted the record.

Within this argument, Plaintiffs emphasize that "MCC employees . . . failed to follow

their own established record keeping procedures by purposefully not documenting or otherwise

accounting for this transaction." (Plf. Br. at 7).  This conclusory statement is a meritless, yet

reoccurring, point of contention for each Individual Defendant.[6]  Instead of addressing the

Individual Defendants' Motion, which states the commonsense reality that small wholesalers and

service stations do not maintain detailed accounting records of *any* products offered for sale,

Plaintiffs baselessly interpret the lack of TOP invoices as some grand scheme, undertaken by

each Individual Defendant, to cover-up their infringement of TOP rolling papers. (SUF ¶ 16, 24,

28).  There is no evidence for such an interpretation.

      Finally, Plaintiffs uselessly devote a paragraph in the Response to establish that Mr.

Choudhri "could see the authentic and counterfeit TOP tobacco rolling papers stored at MCC."

(Plf. Br. at 8).  Specifically, Plaintiffs claim that "Choudhri admitted he worked in the warehouse

and thus, he cannot now claim he was unaware and did not see the wholesale boxes that TOP

tobacco rolling papers are shipped in." *Id*.  However, Republic Tobacco's employee Chad

Goldenberg testified that MCC kept all of its TOP rolling papers behind the counter in the

tobacco department of the store.  (Def. Res. to Plf. SUF ¶ 13).  According to Goldenberg, the

only wholesale cases of TOP papers he found were stored in plain cardboard boxes in the

tobacco department.  *Id*.  Based on this testimony, and the fact that Mr. Choudhri had no

involvement in the tobacco department at MCC, it is entirely reasonable that Mr. Choudhri

would have never seen or paid attention to the TOP wholesale boxes.  Moreover, Plaintiffs argue

that Mr. Choudhri knew where the TOP boxes were because he "immediately" found and

discarded them upon receiving the Complaint. (Plf. Br. at 8).  It is hardly surprising that Mr.

Choudhri was capable of locating and identifying the TOP papers after receiving the Complaint,

because, according to Goldenberg, they were stored behind the counter of the tobacco

department of MCC.  *Id*.  Surely, anybody would conclude that the tobacco department is the

---

[6] Plaintiffs present the lack of record keeping for each Individual Defendant as evidence of willful and knowing infringement of TOP rolling papers.  These identical arguments are all addressed in this paragraph.

logical starting point in the search of an allegedly counterfeit tobacco product. Lastly, Plaintiffs' mention of Mr. Choudhri's disposal of the TOP boxes on the shelf does not eliminate their burden of establishing knowledge, willfulness, or personal participation in the counterfeiting scheme *prior* to receiving the Complaint. The aforementioned facts establish that Plaintiffs cannot meet their burden with respect to Mr. Choudhri and that summary judgment should be granted in his favor.

## 2. <u>Muzafar Ali</u>

Plaintiffs' entire argument that Muzafar Ali personally participated in the sale of counterfeit TOP brand products lacks any record support. Muzafar Ali owns two gas stations: Yale Gas and Food ("Yale") and a Citgo. Yale is a defendant to this action. Citgo is not.

As established in the Individual Defendants' original motion, Mr. Ali (1) did not participate in Yale's day-to-day management (SUF ¶ 26, ¶ 30); (2) was not in charge of purchasing tobacco products, including TOP-brand cigarette rolling papers, for Yale (SUF ¶ 26); and (3) delegated all of the managerial responsibilities at Yale to an employee. *Id.* Unable to controvert any of these facts, Plaintiffs attempt to manufacture the appearance of personal liability.

Two of Plaintiffs' factual basis for asserting personal liability are that (i) "[Ali] owns Yale" and (iv) "at times [Ali] personally works at Yale." (Plf. Br. at 9). Inserted between these proposed facts, Plaintiffs state "(iii) *[Ali] is responsible* for the purchase and sale of all tobacco-related products, including TOP cigarette rolling papers." *Id*. (emphasis in original). Conspicuously missing from assertion (iii), that Ali is responsible for the purchase and sale of TOP cigarette rolling papers, is the ever-so-important qualifying phase "at Yale." This is because Ali *is not responsible* for the purchase and sale of TOP papers at Yale. (SUF ¶ 26).

8

Instead, the record unequivocally indicates that (1) Ali owns both Yale and a Citgo gas station; (2) Ali works almost exclusively at the Citgo gas station; and (3) Ali delegated all of the responsibilities of purchasing and selling TOP rolling papers at Yale to an employee, Faheem Hasan. (Def. Res. to Plf. SUF ¶ 20.; SUF ¶ ¶ 26, 30).

Moreover, Plaintiffs set forth the fact that "[Ali] has purchased and sold at least one package of 24 booklets per month between 2006 and 2012 of TOP products" and that "he continued to sell TOP papers." (Plf. Br. at 9). Again, while Ali owns a non-defendant gas station and purchased TOP tobacco products for that gas station, there is no evidence of his knowing or willful infringement of TOP rolling papers.[7] Not only do Plaintiffs fail to establish any set of facts showing Ali's personal participation in the manufacture or sale of counterfeit TOP papers, they have failed to establish that Ali had any responsibilities whatsoever at Yale gas station. For this reason, summary judgment should be granted in favor of Mr. Ali.

### 3. **Bashir Chaudry**

As with Mr. Choudhri and Mr. Ali, the record is devoid of facts suggesting that Bashir Chaudry possessed any knowledge, willfulness, or personal participation in the infringement of TOP rolling papers. To create the appearance of personal participation in the sale of counterfeit TOP rolling papers, Plaintiffs state that Bashir Chaudry "(i) is the President and owner of South Chicago One, Inc.; and (ii) occasionally works behind the register where TOP product was sold in his store." (Plf. Br. at 10). These facts establish no more than Chaudry's corporate title and that, due to the nature of his small business, he works behind the cash register when needed. Plaintiffs supplement these points, however, by averring that Chaudry "(v) sold *at least* "one to

---

[7] Plaintiffs' contend that Ali knowingly sold counterfeit TOP papers because he sometimes purchased TOP papers from a mobile vendor. Plaintiffs make this identical argument against Individual Defendant Zubair Khawaja and principally rely on Khawaja's deposition testimony. As such, this argument will be addressed under Khawaja's section of this Reply.

two packages of 24 booklets" of what was purportedly TOP product." *Id.* (emphasis added).  In fact, what Chaudry actually said on the record is that "[he] has sold *approximately* one to two packages of 24 booklets of TOP rolling papers *since about two and a half to three years ago*." (Def. Res. to Plf. SUF ¶ 31).  Again, even with Plaintiffs' "adjustment," selling approximately one to two boxes of TOP rolling papers over a three year period is not sufficient evidence to establish a willful scheme to sell counterfeit TOP rolling papers.  The standard set forth in *Dangler* demands more.

Plaintiffs also cite the deposition of Seth Gold, the executive VP and senior legal counsel for Republic Tobacco, for the proposition that "Chaudry purchased TOP papers from three different wholesalers at various times despite the fact that Plaintiffs were the only authorized distributor of TOP product." (Plf. Br. at 10).  An elementary understanding of a supply chain and a cursory review of the evidence reveals the absurdity of this claim.  Republic Technologies France ("RTF") manufactures TOP rolling papers in France.  After manufacturing the papers, RTF ships the papers via boat and truck to Republic Tobacco, L.P., which is the master distributor of TOP rolling papers.   (Def. Res. to Plf. SUF ¶ 29).  Republic Tobacco, L.P. then distributes TOP rolling papers to wholesalers.  Retailers, like Mr. Chaudry, purchase TOP rolling papers from these wholesalers.  There is nothing illegal or suspect about purchasing from wholesalers or, for that matter, from more than one wholesaler.  It is, in fact, how TOP Tobacco's supply chain is intended to work.

Finally, Plaintiffs falsely claim that Chaudry "continued to sell what purported to be TOP cigarette rolling papers after receiving the Complaint, but never even bothered inspecting his inventory." (Plf. Br. at 10).  The record contradicts this statement.  In fact, when asked if he looked at his inventory, Chaudry testified that:

10

Q. Okay. So you never looked at them?

A. No. We have only two boxes, you know. There's no big inventory we can look in.

Q. Did you look at the booklets?

A. We look at it. It looks the same to me.

(Def. Res. to Plf. SUF ¶ 32). Mr. Chaudry had two boxes of TOP papers, looked at the TOP

booklets, determined that the booklets appeared authentic and continued operating his service

station. Again, a plain reading of the record flatly refutes Plaintiffs' claim.

**4. Zubair Khawaja**

Plaintiffs cannot prove any set of facts that warrant a finding of personal liability against

the final Individual Defendant, Zubair Khawaja. Although Zubair Khawaja purchased the

inventory for defendant Southern Gas and Food, the record remains barren of facts establishing

any knowing or willful infringement on his part. Plaintiffs primarily contend that Mr. Khawaja

willfully and knowingly sold counterfeit TOP rolling papers because "he bought TOP product

from a person named "Umer" whose last name is unknown out of the back of a van." (Plf. Br. at

11). More specifically, Plaintiffs argue that "the Individual Defendants go as far as stating that

purchasing goods from what they call "mobile vendors" is not unusual, a fact contradicted by

Defendant Khawaja himself." Once again, Plaintiffs misstate the record:

Q. Okay. Did you ever think that that was strange that he was selling inventory out of his van?

A. No.

(SUF ¶ 34). Based on the record, Khawaja did not find it strange that there were mobile vendors.

Plaintiffs then claim that "Khawaja himself . . . later admitted that no other vendors sell

inventory from a van." *Id*. This is the record:

11

Q. No. Are there any other vendors **on this list**, Lawrence, Midwestern, Hinsdale or Black Stone, do they ever come by and sell inventory out of a van?

A. No.

(Def. Res. to Plf. SUF ¶ 11). Khawaja did not state that no other vendors in Chicago sell inventory out of a van. He stated that the four specific vendors mentioned in that question do not sell inventory out of a van. This testimony does not mean that mobile vendors were unusual in the wholesale market, nor does it suggest that Khawaja or any other Individual Defendant had or should have had suspicion when entering into a transaction with a mobile vendor. In addition, and critically, Plaintiffs are merely assuming that the TOP products sold by mobile vendors were counterfeit, without providing any factual basis for these presumptions.

Plaintiffs other attempts to prove Khawaja's willful or knowing infringement are similarly doomed. In particular, Plaintiffs' argue that Khawaja "continued to sell TOP papers even after being put on notice that the merchandise was potentially counterfeit." (Plf. Br. at 11). In making this assertion, Plaintiffs omit the portion of Khawaja's testimony where he discussed his thorough inspection of his TOP products and inability to notice any signs that it was counterfeit. Khawaja testified:

Q. When you read the complaint, you didn't do any inspection of your inventory or whatever you had in the store?

A. Yeah, I did the inspection to see what is the problem, but we never find out what is the problem is.

Q. What kind of inspection did you do?

A. Just check to see them, the TOP paper.

Q. Did you – you mean, when you – when you say "check," do you mean check the boxes or check the booklet?

A. Check the box.

12

(Def. Res. to Plf. SUF ¶ 38). This testimony does not establish Khawaja's knowledge or willfulness; rather, it demonstrates Mr. Khawaja's prudence and genuine inability to discern whether he possessed artificial TOP rolling papers. For these reasons, summary judgment in favor of Mr. Khawaja is warranted.

**B.  There is No Evidence Demonstrating "Willful Blindness" on the Part of the Individual Defendants.**

Not only is it clear that the Individual Defendants did not willfully and knowingly participate in any alleged infringement, they, in fact, could not have knowingly participated in any such infringement because they lacked the capacity to identify counterfeit TOP papers. (SUF ¶ 40). Plaintiffs' only response to this argument is to claim that the requisite knowledge can be inferred from the Individual Defendants' conduct and that their "willful blindness" is a sufficient basis for holding them personally liable. (Plf. Br. at 13-14). In support of their argument, Plaintiffs' Response cites *Microsoft Corp. v. Rechanik*, 249 Fed. Appx. 476 (7th Cir. 2007), where summary judgment was granted in favor of Microsoft and against *pro se* defendant Rechanik.

Plaintiffs' reliance on *Rechanik*, however, is misplaced, as the facts are drastically different from this case. In *Rechanik*, the individual defendant, Rechanik, opened a business in Ohio for the purpose of selling counterfeit Microsoft software products. *Id*. at 477. After Rechanik failed to comply with Microsoft's cease and desist letter, Microsoft brought suit against Rechanik in the Northern District of Ohio (the "Ohio Case") and obtained a $980,000 judgment along with a permanent injunction against Rechanik for various infringement violations. *Id*. citing *Microsoft Corp. v. Rechanik*, No. 1:99CV0965 (N.D.Ohio Mar. 3, 2000).

Rechanik ignored the permanent injunction and opened a new business in Illinois, which also sold counterfeit Microsoft products. *Id*. Microsoft discovered Rechanik's new company

13

was once again selling counterfeit Microsoft products and sent him another cease and desist letter. Rechanik ignored the cease and desist letter and continued to sell counterfeit Microsoft products, and Microsoft brought suit against him in Illinois. *Id.* While Rechanik, like the Individual Defendants in this case, insisted that he did not know that the Microsoft products were counterfeit, Rechanik, proceeding *pro se, **presented no evidence to contradict*** Microsoft's evidence in support of summary judgment and, accordingly, summary judgment was granted. Not surprisingly, the Seventh Circuit did not reverse the entry of summary judgment based upon Rechanik's argument that, even ***after*** being found liable for precisely the same counterfeiting activity, he did not realize the products he obtained using the same highly suspect business practices were counterfeit. The undisputed evidence clearly indicated that Rechanik intentionally encouraged his company's infringement. *Id.* at 478. Rechanik bought certificates of authentication ***without the accompanying software***, he bought software based solely on which supplier had the lowest price without regard to whether it was authentic, and he never inspected the software to see if it was counterfeit. *Id.* At best, the Court concluded, Rechanik's "ostrich-like" business practices amounted to willful blindness. *Id.* at 479. Especially in light of the fact that Rechanik had a nearly identical prior judgment against him in the Ohio Case, it is clear that there was "overwhelming and unrefuted" evidence that supported a finding of his willful blindness.

Here, Plaintiffs' characterization of the Individual Defendants' conduct as "ostrich like business practices" similar to that in *Rechanik* is wholly unsupported. The Individual Defendants were never sued or accused of counterfeiting any products prior to this case, and did not even know that counterfeit TOP rolling papers were in circulation. (SUF ¶ ¶ 14, 23, 31, 35). Unlike the plaintiff in *Rechanik*, TOP never issued cease and desist letters to any of the

14

defendants in this case, and Individual Defendants inspected their inventories and consulted with an attorney once they received the Complaint. (Def. Res. to Plf. SUF ¶ 32, 38). These actions are not those of defendants that have "ignored plaintiff's notices…, did not seek advice of an attorney, and passed the matter off as a nuisance" as Plaintiffs contend. *Lorillard Tobacco Co. v. S & M Cent.r Serv. Corp.*, 03 C 4986, 2004 WL 2534378 (N.D. Ill, Nov. 8, 2004) quoting *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994).

Finally, Plaintiffs' claims of "inferred" willful blindness are particularly weak considering that some of the Individual Defendants are not responsible for the purchase of TOP paper. (SUF ¶11, 26). Those that are pay market price and, unlike the defendant in *Rechanik*, consider other factors such as product selection and proximity to their business when choosing a supplier.[8] (SUF ¶ 34; Def. Res. to Plf. SUF ¶ 30). As set forth *supra,* most of the Individual Defendants do not work behind the counter and do not typically see the TOP products at issue on a daily basis. (SUF ¶¶ 11, 20, 30). Further, the Individual Defendants all testified that they could not tell whether the TOP papers were real or counterfeit, even after inspecting the products after receiving the Complaint. (SUF ¶ 40). In fact, the counterfeit TOP rolling papers were so indistinguishable that Plaintiffs' private investigator, equipped with decades of investigatory experience, could not tell the difference between authentic and counterfeit TOP papers. (SUF ¶ 39). These facts demonstrate that the Individual Defendants are not feigning ignorance – rather, they had no reason to know that the indistinguishable TOP rolling papers, one of the hundreds of products they offer for resale, were counterfeit.

---

[8] Plaintiffs' reliance on *Lorillard Tobacco Co. v. S & M Central Service Corp.*, No. 03 C 4986, 2004 WL 2534378 (N.D. Ill, Nov. 8, 2004) is equally misplaced. In that case, the counterfeit products were bought at suggestively under market prices, the packaging of the products was significantly different from authentic product, and the owner admitted in his deposition that it was not his "business to find out if they're counterfeit or not." *Id*. at *7. Moreover, *S & M* did not even have to do with individual liability, but rather concerned enhanced statutory damages for the corporation at the post-trial stage after the jury had already made a finding of willfulness.

### C. Summary Judgment is Appropriate for the Additional Reason that All of The Individual Defendants' Conduct Was Within the Scope of Their Corporate Duties.

The Individual Defendants are entitled to summary judgment for the further reason that there is no genuine issue of material fact as to whether their alleged conduct was within the scope of their corporate duties. Two Individual Defendants, Mr. Choudhri and Mr. Ali, delegated all of the responsibilities concerning purchasing and selling TOP-brand products to employees and the record unequivocally demonstrates that the remaining Individual Defendants, Mr. Khawaja and Mr. Chaudry, acted entirely within the scope of their duties. (SUF ¶ 11, 26, 19, 33). In their Response, Plaintiffs contest the Individual Defendants' argument with respect to the scope of their corporate duties by overstating the holding in *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 857 (N.D. Ill. 2009). Plaintiffs argue that *C.S.B.* stands for the proposition that a corporate officer need not act outside of the scope of his employment in order to satisfy the *Dangler* standard. (Pl. Resp. at 4-5). Plaintiffs, however, set forth the purported holding in *C.S.B.* without discussing any of its facially inapplicable facts.

In *C.S.B.*, the individual defendant, who was the person with the responsibility for selecting the products that the defendant corporation manufactured and marketed, unilaterally ordered his corporation to emulate, manufacture, and market a world famous knife holder. *C.S.B.*, 626 F. Supp. 2d at 843. The individual defendant personally selected the knife holder's configuration and deliberately sought to trade on the goodwill established by another corporation, C.S.B. *Id.* After directing his company to manufacture these replica knive holders, the individual defendant personally attended trade shows where he promoted and sold this product. *Id.* The *C.S.B.* court, on a Rule 12(b)(6) motion to dismiss, held that there were

sufficient allegations that the individual defendant used his corporation to manufacture and sell a counterfeit product *Id*. at 860.

First of all, the *C.S.B.* decision is readily distinguishable because it was an order on a motion to dismiss, not a motion for summary judgment[9], and the court specifically noted the difference by stating "allegations of personal participation in the manufacture or sale of a company's product are adequate at this stage of the case." *Id*. at 860. Furthermore, the *C.S.B.* court specifically held that the complaint "contains more than the vague language and conclusory statements and does not rest solely on the fact that [the individual defendant] was a corporate officer. Instead, it alleges that he was personally involved in choosing to sell and in fact personally marketed the [counterfeit knife]." *Id*. at 858. More pointedly, the court noted that the individual defendant had allegedly participated in the creation, design, manufacture and advertisement of the counterfeit product. The court concluded that these activities, which go beyond the traditional scope of a corporate officer, satisfy the personal participation prong of *Dangler*. Thus, according to the *C.S.B.* court, personal participation consisted of the individual corporate officer designing, manufacturing, and marketing a known counterfeit good. *Id*. at 860. Plaintiffs' reliance on a case involving these alleged facts demonstrates how far they must go in order to find some arguable precedent.

In contrast, here, there are no allegations or facts suggesting that the Individual Defendants designed, manufactured, or marketed counterfeit TOP papers. Instead, the counterfeit TOP papers were already in the stream of commerce and purchased, at market prices,

---

[9] In contrast to Plaintiffs' arguments that the Individual Defendants' authorities are not persuasive because they are all at the motion to dismiss stage (See Dkt. 199 at 12-13 and FN3 supra at 4), which presents nothing more than a distinction without difference, the fact that *C.S.B.* was decided on a motion to dismiss is significant here. As discussed at length *infra* at 21-22, the standard for defending a motion to dismiss is decidedly lower than that for opposing a motion for summary judgment, making the *C.S.B.* case as equally unpersuasive as Judge Guzman's denial of the Individual Defendants' 12(b)(6) Motion to Dismiss.

mostly by the Individual Defendants' agents. (SUF ¶ 11, 26). The Individual Defendants were unaware that counterfeit TOP papers had been manufactured anywhere and were especially unaware that the TOP papers possessed by their business were potentially counterfeit. (SUF ¶ ¶ 14, 23, 31, 35). In truth, TOP rolling papers are one of many products offered by the defendant businesses; they are placed behind the counter, sandwiched between every other tobacco product and handed to customers who ask for them. The Individual Defendants did not advertise or intend to increase profits from counterfeit TOP paper (SUF ¶ ¶ 10, 21, 28, 36). Unlike the individual defendant in *C.S.B.*, the Individual Defendants acted in a manner consistent with the size and nature of their businesses, and none of the Individual Defendants' conduct rose to the level that *Dangler* or its progeny requires. The law, therefore, demands summary judgment in favor of the Individual Defendants.

### D. The Court Should Disregard Plaintiffs' Meritless Technical Arguments.

Without any reasonable basis to contest summary judgment based on the record that has been presented to the Court, Plaintiffs are forced to argue meritless technicalities in the hopes of avoiding having to meet their burden. Plaintiffs' Response includes a number of arguments that can charitably be characterized as red herrings requiring little more than a summary rejoinder.

### 1. The Individual Defendants' Motion for Leave to File Their Answer Should Be Granted.

First, Plaintiffs argue that all allegations directed at the Individual Defendants in their Third Amended Complaint are admitted because the Individual Defendants did not file a timely answer and that this alone is enough to deny the Individual Defendants' Motion for Summary Judgment. Absent from this footnote is any mention of the Individual Defendants' Motion for Leave to File Answer *Instanter* ("Motion for Leave"), which was filed pursuant to Federal Rule of Civil Procedure 6(b)(1)(B) on June 14, 2013. (Dkt. 183). The Motion for Leave (Dkt. 203,

18

203-1) addressed the circumstances which resulted in the Answer not being filed earlier, as well as the facts and controlling law that supported filing it *Instanter*. (Dkt. 183 at 1-5). On June 20, 2013, upon presentation of the Motion for Leave, this Court informed the parties that the Court would take the Motion for Leave with the impending cross-motions for summary judgment. (Dkt. 185).

Plaintiffs do not address any of the Motion for Leave's substantive points in their summary judgment pleadings, including that (1) Plaintiffs have suffered no prejudice[10], (2) the delay has had no impact on the proceedings, (3) the reason for the delay (excusable neglect on behalf of counsel due to a clerical oversight) is a proper basis to allow the Answer to be filed, (4) the Individual Defendants acted in good faith and their counsel immediately took steps to address and correct the error, including informing Plaintiffs' counsel in advance of filing their Motion for Leave, and (5) the proposed answer mirrored the answer timely filed on behalf of the corporate defendants. (Dkt. 183 at 3-5). In failing to address the factual and legal arguments advanced by the Individual Defendants, Plaintiffs have effectively conceded the merits of the Motion for Leave and should be barred from contending otherwise. *See Roe-Midgett v. CC Servs., Inc.,* 512 F.3d 865, 876 (7th Cir. 2008). In any event, the Individual Defendants' Motion for Leave should be granted and Plaintiffs' claim that the Individual Defendants are in default should be rejected by the Court.

## 2. The Affidavits of the Individual Defendants Are Proper.

Throughout their Response, Plaintiffs misguidedly argue that the affidavits of the Individual Defendants should be disregarded because they are "self-serving." (Plf. 56.1 Res. at 3; Plf. Br. at 1, 2). The fact that an affidavit is self-serving does not render it improper. *Pryor v. City of Chicago*, No. 07 C 2479, 2010 WL 431470 (N.D. Ill. February 01, 2010). In fact "[a]ll

---

[10] A fact conceded by Plaintiffs' counsel at hearing.

affidavits are 'self-serving' insofar as they serve the interests of the party submitting them." *Heller v. Graf*, 488 F. Supp. 2d 686, 690 (N.D. Ill.2007). Instead, the rule is that parties may not thwart the purposes of procedural rules by submitting affidavits that create sham issues or contradict their own depositions prior to summary judgment. *See, e.g., Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102, 1104 (7th Cir.1985). Plaintiffs, however, cannot and do not point to a single affidavit statement that is "inherently inconsistent" with the record or that squarely contradicts an earlier statement. *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1169-70 (7th Cir.1996). Instead, a fleeting glance at the Individual Defendants' Statement of Uncontested Facts reveals that the affidavit cites are overwhelmingly followed by citations to the record, showing exactly where the factual support for each statement is located. No additional facts or inconsistent theories are presented; the Individual Defendants merely condensed the record cites into an affidavit for the convenience of the Court.

### 3. The Individual Defendants Provided Sufficient Information Regarding Profits Derived From TOP Products.

Plaintiffs' argument that the Individual Defendants should be precluded from relying on evidence that TOP tobacco, or any rolling paper product for that matter, was not a profit center for their businesses is completely baseless. (Dkt. 200 at 1-3). In addition to citing no worthwhile authority for this proposition[11], Plaintiffs were, in fact, given sufficient information to determine the profits derived from TOP products, and the only information that the Individual Defendants objected to were personal financial bank records and tax returns. The Honorable Judge Ronald A. Guzman specifically held that these discovery requests were unnecessary to the determination

---

[11] Plaintiffs only cite to the factually inapposite case of *David v. Caterpillar, Inc.*, 324 F.3d 851 (7th Cir. 2003), which merely states the general rule that a party is obligated to supplement their initial disclosures and answers to Plaintiffs' discovery requests. The Individual Defendants were under no such obligation to provide personal financial records to Plaintiffs because the Court denied Plaintiffs Motion to Compel this particular information.

of the Individual Defendants' profits from TOP brand sales in light of the other information

provided to Plaintiffs:

> Right now you've got more than sufficient information, if it's given to you
> correctly, to track the items they purchased and sold and how much they sold
> them for, purchased them for and sold them for; and from that you can find
> out what, if any, profit they derived from selling these counterfeit products.

(4/4/12 Hearing Transcript Dkt. 109, 27:10-15).  Plaintiffs' attempt to deny facts, which are

undisputed in the record, based on objections that the Court has already specifically rejected is

neither persuasive nor proper in a 56.1 response. *See Menard v. Wells Manufacturing Co.*, No.

03-C8313, 2007 WL 2688445, at *1 (N.D. Ill. Sept. 11, 2011).

### 4. The Denial of the Individual Defendants' Motion to Dismiss Does Not Require the Denial of Their Motion for Summary Judgment.

Equally unavailing is Plaintiffs' argument that the Individual Defendants' Motion for

Summary Judgment should be denied because it makes similar legal arguments as those

advanced in their Motion to Dismiss the Third Amended Complaint, which was denied by Judge

Guzman.  (Dkt. 199 at 6).  Of course, different standards apply to a motion to dismiss and a

motion for summary judgment.  The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is

to test the legal sufficiency of the complaint, not to decide its merits, and must be considered in

light of the liberal pleading standard of Rule 8(a)(2), which requires only "a short and plain

statement of the claim showing that the pleader is entitled to relief." *Gibson v. City of Chicago*,

910 F.2d 1510, 1520 (7th Cir.1990);  On the other hand, to avoid summary judgment, the

opposing party must go beyond the pleadings and "set forth specific facts showing that there is a

genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Judge Guzman's ruling merely stated that the "allegations are sufficient to defeat

defendants' **motion to dismiss**." (Dkt. 156) (emphasis added).  In light of the heightened standard

needed to sustain a motion to dismiss—specifically that the complaint must fail to state a cause of action assuming that the allegations set forth in the complaint are true, Plaintiffs' assertion that Judge Guzman's ruling on Individual Defendants' Motion to Dismiss is preclusive in resolving their Motion for Summary Judgment is completely misplaced[12]. The Individual Defendants have met their burden and summary judgment should, accordingly, be granted in their favor.

## Conclusion

WHEREFORE, for the reasons set forth herein, the Individual Defendants pray that this Court enter summary judgment in their favor on all counts of the Third Amended Complaint.

Respectfully submitted,

By: /s/ Richard J. Prendergast
    One of the Attorneys for
    Defendants

Richard J. Prendergast, Esq.
Michael T. Layden, Esq.
Jennifer M. Ryder, Esq.
RICHARD J. PRENDERGAST, LTD.
111 W. Washington St., Suite 1100
Chicago, Illinois 60602
(312) 641-0881

---

[12] Plaintiffs also unfairly criticize the Individual Defendants for relying on authorities where the claim was defeated at the motion to dismiss stage. (Dkt. 199 at 12-13). Plaintiffs' argument in this respect is similarly confusing since, as demonstrated by the contrasting standards, a plaintiff has a much easier time defending a motion to dismiss (requiring only that plaintiff has stated a legally cognizable claim) than at the summary judgment stage (requiring that the non-moving party demonstrate the existence of a genuine issue of material fact). Thus, cases granting a motion to dismiss are all the more persuasive at the summary judgment stage of the case.

## **CERTIFICATE OF SERVICE**

Richard J. Prendergast, an attorney, certifies that on this 6th day of September, 2013, he caused a copy of the foregoing to be served using the CM/ECF System which will send notice of such filing to counsel of record.

/s/  Richard J. Prendergast