**FILED**
9/9/2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TOP TOBACCO, L.P., *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.: 1:11-cv-04460** |
| v. | ) | |
| | ) | |
| MIDWESTERN CASH AND CARRY, | ) | **Magistrate Judge Maria Valdez** |
| LLC, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## REPLY IN SUPPORT OF PLAINTIFFS TOP TOBACCO, L.P.'S AND REPUBLIC TOBACCO, L.P.'S MOTION FOR SUMMARY JUDGMENT

---

Martin T. Tully
Dara Chevlin Tarkowski
Aharon S. Kaye
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
Telephone: (312) 902-5200

## TABLE OF CONTENTS

I. Given Defendants' Concessions, Plaintiffs Are Entitled to at Least Partial Summary Judgment. ........................................................................................................................ 1

II. In Addition to the Corporate Defendants, Summary Judgment Is Also Appropriate On Counts I, II, III, V, VI and VIII as to Plaintiffs' Claims of Infringement On The Part Of The Individual Defendants. ...................................................................................... 2

    A. The Uncontested Facts Establish Joint Liability of the Individual Defendants. ........... 2

    B. Despite Defendants' Protestations Otherwise, A Determination of Joint Liability and Willfulness Is Appropriate At The Summary Judgment Stage. .............. 7

III. Summary Judgment Is Appropriate As To Plaintiffs' Federal & State Dilution Claims. ................................................................................................................................ 14

    A. Defendants' Reliance On *North Atlantic* Is Misplaced. ............................................... 14

    B. The Factors Demonstrating Dilution By Blurriness Between Marks Weigh In Plaintiffs' Favor. ......................................................................................................... 16

    C. The Evidence More Than Sufficiently Demonstrates Defendants Are Liable For Dilution Of The TOP Marks. ............................................................................... 16

IV. Plaintiffs Are Entitled To Some Statutory Damages As A Matter of Law. .......................... 17

V. Plaintiffs' Request for Permanent Injunction is Not "Premature." ....................................... 19

VI. Plaintiffs Are Entitled To An Award Of Their Reasonable Attorneys' Fees. ...................... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander v. Phoenix Bond & Indem. Co.*,
   149 F. Supp. 2d 989 (N.D. Ill. 2001) ....................................................................................10

*Audi AG v. D'Amato*,
   381 F. Supp. 2d 644 (E.D. Mich. 2005)................................................................................16

*BMG Music v. Gonzalez*,
   430 F.3d 888 (7th Cir. 2005) .........................................................................................10, 18

*Burberry Ltd. and Burberry USA v. Designers Imports, Inc.*,
   No. 07 Civ. 3997, 2010 WL 199906 (S.D.N.Y. Jan. 19, 2010)................................................9

*C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*,
   626 F. Supp. 2d 837 (N.D. Ill. 2009) ......................................................................................8

*Cincinnati Ins. Co. v. E. Atl. Ins. Co.*,
   260 F.3d 742 (7th Cir. 2001) .........................................................................................1, 20

*Coach, Inc. v. Diva's House of Style*,
   No. 3:11-CV-253, 2012 WL 6049722 (N.D. In. Dec. 5, 2012) ..............................................8

*Country Rd. Music, Inc. v. MP3.com, Inc.*,
   279 F. Supp. 2d 325 (S.D.N.Y. 2003)..................................................................................11

*Dangler v. Imperial Machine Co.*,
   11 F.2d 945 (7th Cir. 1926) ....................................................................................................7

*Eli Lilly & Co. v. Natural Answers, Inc.*,
   233 F.3d 456 (7th Cir. 2000) ...........................................................................................14, 17

*Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*,
   612 F. Supp. 2d 330 (S.D.N.Y. 2009)..................................................................................11

*Feltner v. Columbia Pictures Television, Inc.*,
   523 U.S. 340 (1998)..............................................................................................................10

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
   689 F. Supp. 2d 585 (S.D.N.Y. 2010)..............................................................................9, 11

*Fidelity & Deposit Co. of Maryland v. United States*,
   187 U.S. 315 (1902)..............................................................................................................10

*Fogerty v. Fantasy*,
   510 U.S. 517 (1994)................................................................................................................9

*Galloway v. United States*,
   319 U.S. 372 (1943)........................................................................................................10

*Gasoline Prods. Co. v. Champlin Refining Co.*,
   283 U.S. 494 (1931)........................................................................................................10

*GoPets Ltd. v. Hise*,
   657 F.3d 1024 (9th Cir. 2011) .......................................................................................18

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
   315 F. Supp. 2d 511 (S.D.N.Y. 2004)..............................................................................9

*Hard Rock Café Licensing Corp. v. Concession Serv., Inc.*,
   955 F.2d 1143 (7th Cir. 1992) .........................................................................................9

*Johnson & Johnson v. Azam Intern. Trading*,
   No. 07–cv–4302, 2013 WL 4048295 (E.D.N.Y. Aug. 9, 2013)....................................17

*KangaROOS U.S.A., Inc. v. Caldor, Inc.*,
   778 F.2d 1571 (Fed. Cir. 1985)......................................................................................10

*Leonel & Noel Corp. v. Central Beer Import & Export, Inc.*,
   No. 08 C 5556, 2012 WL 266370 (N.D. Ill. Jan 30, 2012) ...........................................21

*Lorillard Tobacco Co. v. A&E Oil, Inc.*,
   503 F.3d 588 (7th Cir. 2007) ....................................................................................11, 12

*Lorillard Tobacco Co. v. A&E Oil, Inc.*,
   No. 03 C 5833, 2006 WL 1430774, (N.D. Ill. May 16, 2006) .......................................12

*Lorillard Tobacco Co. v. Ahmad's Pizza, Inc.*,
   866 F. Supp. 2d 872 (N.D. Ohio 2012)...........................................................................16

*Lorillard Tobacco Co. v. Division and Noble Amoco Corp.*,
   390 F. Supp. 2d 678 (N.D. Ill. 2005) ...............................................................................8

*Lorillard Tobacco Co. v. Montrose Wholesale Candies and Sundries, Inc.*,
   2007 WL 2580491 (N.D. Ill., Sept. 10, 2007) ...................................13, 17, 18, 19

*Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*,
   No. 03 C 4986, 2004 WL 2534378 (N.D. Ill. Nov. 8, 2004)............................................8

*Lorillard Tobacco Co. v. Van Dyke Liquor Market, Inc.*,
   471 F. Supp. 2d 822 (E.D. Mich. 2007)..........................................................................17

*McCarter v. Retirement Plan For Dist. Managers of Am. Family Ins. Grp.*,
   540 F.3d 649 (7th Cir. 2008) ..........................................................................................11

*Microsoft Corp. v. CMOS Techs*, Inc.,
  872 F. Supp. 1329, 1340 (D.N.J. 1994) ...............................................................................11

*Microsoft Corp. v. Rechanik*,
  249 Fed. Appx. 476 (7th Cir. 2007)..........................................................................8, 10, 11

*Moseley v. Secret Catalogue, Inc.*,
  537 U.S. 418 (2003)................................................................................................................17

*Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*,
  626 F.3d 958 (7th Cir. 2010) .........................................................................................21, 22

*Otis Clapp & Son, Inc.*,
  754 F.2d 738, (7th Cir. 2008) .........................................................................................20, 21

*Peer Int'l Corp. v. Luna Records, Inc.*,
  887 F. Supp. 560 (S.D.N.Y. 1995) ......................................................................................11

*Poller v. Columbia Broadcasting System, Inc.*,
  368 U.S. 464 (1962)................................................................................................................10

*S & H Indus, Inc. v. Selander*,
  Civil No. 3:11-CV-2988, 2013 WL 1131077 (N.D. Tex. 2013) .............................................17

*Skouras v. United States*,
  26 F.3d 13 (2d Cir. 1994) ......................................................................................................11

*Specht v. Google, Inc.*,
  805 F. Supp. 2d 551 (N.D. Ill. 2011) ....................................................................................21

*TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of the Creator*,
  392 F.3d 248 (7th Cir. 2004) .................................................................................................20

*Tiffany (NJ) Inc. v. eBay, Inc.*,
  600 F.3d 93 (2nd Cir. 2010).....................................................................................................9

*Top Tobacco, L.P. v. North Atlantic Operating Co.*,
  509 F.3d 380, 383 (7th Cir. 2007....................................................................................14, 15

*Top Tobacco, L.P. v. North Atlantic Operating Co.*,
  No 06 C 950, 2007 WL 118527 (N.D. Ill. Jan. 4, 2007) ..................................................14, 15

*United States v. One Parcel of Prop., Located at 755 Forest Rd.*,
  985 F.2d 70 (2d Cir. 1993).....................................................................................................12

*Video Views, Inc. v. Studio 21, Ltd.*,
  925 F.2d 1010 (7th Cir. 1991) ............................................................................................8, 9

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*,
    18 F.3d 502 (7th Cir. 1994) ..............................................................................................9

*Wojtas v. Capital Guardian Trust Co.*,
    477 F.3d 924 (7th Cir. 2007) .....................................................................................1, 20

**FEDERAL STATUTES**

15 U.S.C §§ 1114(1) ...........................................................................................................1

15 U.S.C. § 1117 ..........................................................................................................10, 20

15 U.S.C. § 1117(a) ...........................................................................................................20

15 U.S.C. § 1117(b) ...........................................................................................................11

15 U.S.C. § 1117(c) ...................................................................................................2, 7, 22

15 U.S.C. § 1117(c)(1)...........................................................................................18, 19, 22

15 U.S.C. § 1117(c)(2)...................................................................................10, 18, 19, 22

15 U.S.C §§ 1125(a)(1)(A) .................................................................................................1

15 U.S.C. § 1125(c) .....................................................................................................14, 17

17 U.S.C. § 504(c) ..............................................................................................................10

**STATE STATUTES**

765 Ill. Comp. Stat 1036/65(a). .......................................................................................14

Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Comp. Stat. 510/1 .............1

## ARGUMENT

I.    **Given Defendants' Concessions, Plaintiffs Are Entitled to at Least Partial Summary Judgment.**

It is what Defendants' Response does not say that confirms Plaintiffs Top Tobacco, L.P. and Republic Tobacco, L.P. (collectively, "Plaintiffs") are entitled to *at least* partial summary judgment. Defendants do not contest that Midwestern Cash and Carry, LLC, South One Chicago, Inc., Southern Gas and Food, Inc., and Yale Gas and Food, Inc. (collectively, the "Corporate Defendants") are liable to Plaintiffs under 15 U.S.C §§ 1114(1) and 1125(a)(1)(A) (Counts I, II and III), the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Comp. Stat. 510/1, *et seq*. (Count V), common law trademark infringement (Count VI), and common law unfair competition (Count VIII). Thus, Defendants concede that Plaintiffs are the owners of protectable trademarks (D.I. 201 at ¶¶ 2, 27, 28), and they do not challenge either the fact that their use of Plaintiffs' trademark is likely to cause confusion or that the Corporate Defendants have offered for sale purported TOP brand products that bear imitations of Plaintiffs' protected trademarks. (*See* D.I. 201, 206.) Accordingly, as it relates to the Corporate Defendants, Plaintiffs are entitled to summary judgment as a matter of law on Counts I, II, III, V, VI and VIII.[1]

The only questions remaining, then, for this Court to decide are: (a) whether Plaintiffs are entitled to summary judgment on the issue of liability as to Defendants Nusrat Choudhri, Mufasar Ali, Zubair Khawaja and Bashir Chaudry (collectively, the "Individual Defendants"); (b) whether Plaintiffs are entitled to summary judgment on their claims for trademark dilution

---

[1] *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 927 (7th Cir. 2007) ("The [Plaintiff]s failure to offer any opposition to [Defendant]'s statute of limitations argument constituted a waiver.); *Cincinnati Ins. Co. v. E. Atl. Ins. Co.,* 260 F.3d 742, 747 (7th Cir. 2001) (citing *Wojtas*, for the proposition that a "failure to [oppose] an argument" permits an inference of acquiescence and "acquiescence operates as a waiver.").

against all of the Defendants (Counts IV and VII); and (c) whether, at the summary judgment stage, Plaintiffs are entitled to (i) a collective award of statutory damages against all of the Defendants up to the maximum amount of $32 million pursuant to 15 U.S.C. § 1117(c), (ii) a permanent injunction, and/or (iii) an award of reasonable attorneys' fees. For the reasons stated in Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment ("Plaintiffs' Opening Memorandum" or "Pl. Memo."), Plaintiffs' Opposition to the Individual Defendants' Motion for Summary Judgment, and as discussed below, the answer to each of these questions is "yes."

## II. In Addition to the Corporate Defendants, Summary Judgment Is Also Appropriate On Counts I, II, III, V, VI and VIII as to Plaintiffs' Claims of Infringement On The Part Of The Individual Defendants.

### A. The Uncontested Facts Establish Joint Liability of the Individual Defendants.

As explained in Plaintiffs' Opening Brief and Plaintiffs' Opposition to the Individual Defendants' Motion for Summary Judgment, the undisputed testimony of Defendants determines that, as a matter of law, the Court must conclude that the Individual Defendants knowingly and willfully obtained counterfeit TOP cigarette rolling paper, authorized the purchase and/or sales of counterfeit TOP cigarette rolling paper, ignored and/or recklessly disregarded the purchasing or sale of counterfeit TOP cigarette rolling paper and/or were in an ownership and/or management position which one could reasonably infer allowed them to "direct," "control," and "ratify" the activities of the companies, specifically the sales of the company. While each Individual Defendant professes not to have been involved or aware of their businesses selling counterfeit TOP-brand cigarette rolling papers, none of them are absentee owners uninvolved in the day-to-day operations of their businesses. The record establishes that each of the Individual Defendants was in a position to and did personally and actively participate in the unlawful

2

Case: 1:11-cv-04466 Document #: 219 Filed: 09/09/13 Page 9 of 29 PageID #:3185

conduct and either knew or should have known that goods that they acquired for resale were illegitimate and infringed upon Plaintiffs' marks.

**Defendant Nusrat Choudhri** is the owner of defendant Midwestern Cash and Carry, LLC ("MCC") (D.I. 187, Ex. M, February 16, 2012 Deposition of N. Choudhri at 14: 3-10.) Choudhri admitted he: (i) has sold at least "one package" of product allegedly bearing the TOP trademark (Plaintiffs' Statement of Additional Facts Requiring Denial of Individual Defendants' Motion for Summary Judgment ("SAF") ¶1); (ii) "display[s] TOP rolling papers behind the glass and on the sales counter" (SAF ¶2); (iii) manages MCC (SAF ¶3); (iv) "is familiar with the process by which [MCC] orders cigarette rolling papers" (SAF ¶4); (v) is the direct supervisor of Khalid Jamal ("Jamal"), MCC's keeper of records and computer system (SAF ¶5); (vi) upon receiving Plaintiffs' Complaint, intentionally discarded at least fifteen boxes of relevant evidence (SAF ¶6); and was ultimately responsible for maintaining purchase and sale records of tobacco products. (SAF ¶12.).

Sometime in 2010, MCC claims to have engaged in a highly atypical "barter transaction" with Country Bright Imports ("Country Bright"), an aberrant seller not known to Choudhri and MCC to be an authorized TOP distributor, through which MCC acquired at least 280 boxes of what purported to be TOP cigarette rolling papers in exchange for plastic "shopping bags." (SAF ¶8.) Choudhri must have known that the purchase said to have been made from Country Bright involved counterfeit goods because:

- Contrary to MCC's normal practice, no telephone or fax order was placed for the product said to have been purchased from Country Bright. (D.I. 200, Ex. G, March 3, 2012 Deposition of A. Vargas at 71:16-72:11.)

- Although insisting upon an invoice from a vendor is one way that MCC normally ensures that it is not buying counterfeit goods (*id.* at 119:9-21), that was not done with the alleged purchase from Country Bright. (D.I. 187, Ex. M at 134:24-135:17; 173:2-5; D.I. 200, Ex. C, March 2, 2012 Deposition of K. Jamal at 41:23-42:15, 43:13-44:1.) Instead, contrary

to MCC's normal practice, no purchase order, invoice or receipt was created with respect to the alleged Country Bright transaction. (D.I. 187, Ex. M at 134:24-135:17; 173:2-5; D.I. 200, Ex. C at 41:23-42:15, 43:13-44:1.)

- No contemporaneous inventory records were kept with respect to the alleged purchase of the Country Bright merchandise, unlike MCC's practice for legitimate products. (D.I. 187, Ex. M at 144:21-145:6; D.I. 200, Ex. C at 43:13-44:1.)

- MCC cannot verify the quantity of cigarette rolling papers it claims to have purchased from Country Bright, which was only estimated after the fact. (D.I. 187 Ex. M at 136:22-137:23; D.I. 200, Ex. C at 41:23-42:15, 45:13-47:10, 52:17-53:4.)

- MCC cannot even pinpoint date of the alleged purchase from Country Bright. (D.I. 187 Ex. M at 63:20-67:8.)

- It was highly-unusual for MCC to "pay" for merchandise with other merchandise. Indeed, long-time employee Arnulfo Vargas could not recall any prior instance where MCC had "bartered" for merchandise. (D.I. 200, Ex. G at 139:20-140:17.)

- Although no record was made of the "price" paid (D.I. 200, Ex. C at 58:10-16), MCC claims to have purchased the cigarette rolling papers from Country Bright at a price "a dollar cheaper" than Republic Tobacco's wholesale price. (D.I. 187 Ex. M at 137:24-139:5; D.I. 200, Ex. F, March 14, 2012 Deposition of A. Syed at 88:6-93:18.)

- While Choudhri now claims to know nothing of the purchase from Country Bright, the day after he and MCC received the complaint in this matter alleging that they had sold counterfeit TOP cigarette rolling papers, he knew precisely where to locate them within the MCC warehouse and dispose of them. (D.I. 187, Ex. L, March 23, 2012 Deposition of N. Choudhri at 258:20-260:14; 263:9-264:17; 265:10-16.)

- Of course, no records exist showing exactly how many boxes of counterfeit TOP cigarette rolling papers disposed of by Choudhri. ( D.I. 200, Ex. F at 65:3-17.)

Finally, having purchased legitimate TOP-branded cigarette rolling papers from the Plaintiffs for many years, Defendant MCC cannot seriously contend that its employees were oblivious to the obvious difference in appearance between the cases containing boxes of legitimate product and the cases containing boxes of counterfeit product. The unmarked cardboard cases containing the counterfeit product on the shelves and available for sale at MCC looked nothing like the colorful, branded cases that are used to ship authentic TOP-branded product. (D.I. 187, Ex. P at 34:22-36:13; D.I. 1, Ex. 2.)  The cases of legitimate product also plainly differed in length, height and width from the cases containing the counterfeit product. (D.I. 1, Ex. 2.)  Anyone would have noticed the obvious differences.  Indeed, that was how

Plaintiffs' investigators were able to identify and make covert purchases of cases of the suspected counterfeit product. Thus, when the investigator hired by Plaintiffs purchased two cases of rolling papers directly from MCC, the investigator specifically requested a box of 30 and a box of 40, and was provided with one "smaller case with no visible markings" and one case "clearly marked Republic Tobacco indicating 40 boxes within the case." (D.I. 187, Ex. U at 2.) Obviously, the MCC employee easily identified the "box of 30" (the plain cardboard box) and the "box of 40" (the typical box shipped directly from Republic), which were stored openly on the shelves in MCC's warehouse. (SAF ¶ 13.) Choudhri admitted he worked in MCC's warehouse (SAF ¶14) and cannot say he was unaware and did not see the cases that TOP Tobacco cigarette rolling papers are shipped in. (SAF ¶¶13-14.) Not only did he see the cases, but Choudhri personally discarded at least fifteen boxes of relevant evidence (SAF ¶15), not because he was trying to avoid the sale of counterfeit goods, but because he was "scared." (*Id*.)

**Defendant Bashir Chaudry** is the President and owner of defendant South Chicago One, Inc., which does business as Clark Gas and Food. Chaudry's responsibilities at Clark include day-to-day management, and buying and selling of merchandise. (D.I. 187, Ex. O, February 20, 2012 Deposition of B. Chaudry at 16:10-17:1.) Chaudry is responsible for purchasing tobacco-related products, including TOP cigarette rolling papers (*id.* at 18:3-12), and he also sells TOP cigarette rolling paper products. (*Id.* at 107:21-22.) Chaudry occasionally works behind the register where TOP product was sold in his store (SAF ¶28). Chaudry admitted to selling at least "one to two packages of 24 booklets" of what was purportedly TOP product (SAF ¶31.) Chaudry has "purchased [TOP-brand cigarette rolling papers] from [three different wholesalers] at various times" despite the fact that Plaintiffs were the only authorized wholesaler of TOP product (SAF ¶29.) He continued to purchase what purported to be TOP

cigarette rolling papers from MCC after the filing of the Complaint, which clearly put him on notice that MCC was selling counterfeit TOP product (SAF ¶30), and he continued to sell what purported to be TOP cigarette rolling papers after receiving the Complaint, but never inspected his inventory. (SAF ¶32.)

**Defendant Musafar Ali** is the owner of defendant Yale Gas and Food. ( SAF ¶18.) Ali manages the business activities of the gas station operated by Yale (SAF ¶19), and is responsible for the purchase and sale of all tobacco-related products, including TOP cigarette rolling papers (SAF ¶20.) At times, Ali personally works at Yale selling merchandise (SAF ¶21.) He has purchased and sold at least "one package of 24 booklets per month" between 2006 and 2012 of TOP product (SAF ¶22.) Ali and Yale have purchased TOP cigarette rolling papers only from the Plaintiffs and someone named "Oumar" (D.I. 187, Ex. E, April 5, 2012 Deposition of M. Ali at 33:19-35:15; 43:22-45:1; 54:17-55:6.) Significantly, purchases of cigarette rolling papers from Oumar are made out of the back of Oumar's van. (*Id.* at 55:7-55:22.) Although the counterfeit TOP cigarette rolling papers that Yale offered for sale could have only come from Oumar, Ali knowingly continued to purchase tobacco products from Oumar *after* being served with the complaint in this matter. (*Id.* 107:2-107:10.) Thus, Ali continued to sell TOP papers after being put on notice that the product he was selling was potentially counterfeit. (SAF ¶23.)

**Defendant Zubair Khawaja** owns Southern Gas and Food and manages its business activities. (SAF ¶34.) Khawaja works at the gas station about once per month, including working the cash register. (D.I. 187, Ex. D, February 21, 2012 Deposition of Z. Khawaja at 11:20-12:13.) As the owner and manager of Southern, Khawaja is responsible for the purchase and sale of and keeping inventory for all tobacco-related products, including TOP cigarette rolling papers. (*Id.* at 14:7-11, 53:7-9; 80:9-16.) He purchased and sold at least "one box of 24

booklets per month" of what was purportedly TOP product between March 2010 and April 2012. (SAF ¶¶35, 36.) Southern has purchased TOP cigarette rolling papers from MCC and several vendors, including periodically from an individual named "Umer." (D.I. 187, Ex. D at 18:6-19:13.) Unlike other vendors, purchases of cigarette rolling papers from Umer were for cash only and made out of the back of his van. (*Id.* at 21:8-22:12; 22:23-23:1.) Southern has also purchased cigarette rolling papers out of the back of a van from someone named "Ifran," for whom Khawaja did not even know the phone number. (*Id.* at 48:18-50:2.) Khawaja has never inquired as to where Umer obtains his TOP cigarette rolling papers (*id.* at 55:14-16), and he continued to make purchases from Umer even after being served with the complaint in this matter. (*Id.* at 50:15-52:9.) Thus, Khawaja continued to sell TOP cigarette rolling papers even after being put on notice that the merchandise he was selling was potentially counterfeit. (*Id.* at 56:24-59:1.)

### B. Despite Defendants' Protestations Otherwise, A Determination of Joint Liability and Willfulness Is Appropriate At The Summary Judgment Stage.

Defendants argue that the Court cannot, at the summary judgment stage, rule on the issues of individual joint liability or make a finding of willfulness that is required to allow an award of enhanced statutory damages under 15 U.S.C. § 1117(c). (Def. Br. at 4.) However, under the standard set forth in *Dangler v. Imperial Machine Co.*, 11 F.2d 945 (7th Cir. 1926) and its progeny, which the Defendants argue applies here (Def. Br. at 6-7), joint liability under the Lanham Act does not *require* proof of intent. Rather, it is sufficient for a plaintiff to demonstrate that the defendant "personally participate[d] in the manufacture or sale of the infringing article. . ." *Dangler*, 11 F.2d at 947.

Courts applying the *Dangler* standard have held "[t]he 'special showing' can be made in three possible ways with respect to corporate officers: (i) personal participation in the

manufacture or sale of the infringing article; (ii) use of the corporation as an instrument to carry out the officer's own willful and deliberate infringements; or (iii) knowing use of an irresponsible corporation with the purpose of avoiding personal liability." *See C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 860 (N.D. Ill. 2009) (rejecting the argument that claims of "extraordinary participation by the individual corporate officer outside the scope of his employment" are required).[2] Thus, joint liability may be determined as a matter of law, without a determination of knowledge or intent: active participation is sufficient. *Id.* For this reason, the Court may properly rule that the Individual Defendants are jointly liable to Plaintiffs at the summary judgment stage. *See Microsoft Corp. v. Rechanik*, 249 Fed. Appx. 476, 479 (7th Cir. 2007); *see also Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1021 (7th Cir. 1991) (noting, "one who undertakes a course of infringing conduct may neither sneer in the face of the [trademark] owner nor hide its head in the sand like an ostrich."); *see also Lorillard Tobacco Co. v. Division and Noble Amoco Corp.*, 390 F. Supp. 2d 678, 682 (N.D. Ill. 2005) ("*Noble*") (noting, "[b]ecause sellers bear strict liability for violations of the Lanham Act, even innocent dealers who sell goods bearing an infringing mark are liable for trademark infringement. Defendant's claims of ignorance as to the status of the cigarettes are, therefore, irrelevant to the issue of liability.") (internal citations omitted).

For purposes of establishing individual joint liability and that enhanced damages are warranted here, "[w]illful infringement may [also] be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless

---

[2] *See also Coach, Inc. v. Diva's House of Style*, No. 3:11-CV-253, 2012 WL 6049722, at *8 (N.D. In. Dec. 5, 2012) (granting plaintiff's motion for summary judgment against defendant corporation and individual defendant). (*See also* June 6, 2012 Order, D.I. 122 (stating the same elements and holding that the Individual Defendants can be held liable for the state law torts "if they actively participated in the allegedly wrongful acts").)

disregard for the owner's rights." *Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, No. 03 C

4986, 2004 WL 2534378, at *7 (N.D. Ill. Nov. 8, 2004) ("*S&M Cent. Serv.*") (citations omitted).

As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct.

*Id.* Willful infringement may be shown where the "defendant ignored the plaintiff's notices . . .

and passed the matter off as a nuisance." *Id.* (quoting *Wildlife Express Corp. v. Carol Wright*

*Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994)). Indeed, the Seventh Circuit has held that willful

blindness is a sufficient basis for finding a violation of the Lanham Act.[3] This standard is

particularly relevant to the Defendants' purchases and sales of TOP branded goods. As one court

has observed:

> Selling products acquired outside the customary chain of retail distribution and
> without the usual authenticating documentation is a high risk business. In the face
> of that risk, it was unreasonable for [defendant] to rely on the self-serving
> assurances of [the seller], or [defendant's] admittedly inexpert opinion about the
> authenticity of the goods.

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004) (internal

quotation marks and citation omitted); *see also Burberry Ltd. and Burberry USA v. Designers*

*Imports, Inc.*, No. 07 Civ. 3997, 2010 WL 199906, at *9 (S.D.N.Y. Jan. 19, 2010) (noting that

defendant "willfully failed to investigate the bona fides of Burberry-branded goods it purchased

for sale").

---

[3] *See Video Views, Inc.*, 925 F.2d at 1021, overruled on other grounds by *Fogerty v. Fantasy*, 510 U.S.
517 (1994) (noting, "one who undertakes a course of infringing conduct may neither sneer in the face of
the [trademark] owner nor hide its head in the sand like an ostrich."); *Hard Rock Café Licensing Corp. v.
Concession Serv., Inc.*, 955 F.2d 1143, 1148 (7th Cir. 1992) (citing *Louis Vuitton S.A. v. Lee*, 875 F.2d
584, 590 (7th Cir. 1989) (Posner, J.) (noting that defendant was on inquiry notice concerning the
authenticity of its goods, but "failed to inquire further because he was afraid of what the inquiry would
yield.")); *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 599
(S.D.N.Y. 2010) (granting Fendi's motion for summary judgment because the record established
willfulness as a matter of law, and recognizing: "The standard for willfulness is whether the defendant
had knowledge that his or her conduct represented infringement *or recklessly disregarded the
possibility.*") (citing *Kepner-Tregoe Inc. v. Vroom*, 186 F.3d 283, 288 (2nd Cir. 1999)) (emphasis added);
*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 109 (2nd Cir. 2010) (holding that a defendant may not
"shield[s] itself from learning of the particular infringing transactions by looking the other way.").

Citing, *KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1577 (Fed. Cir. 1985), Defendants assert that because the liability of the Individual Defendants and the enhanced damages requested by Plaintiffs "requires an assessment of each Defendants' state of mind, it is an inherently factual issue that must be decided by the jury, not resolved as an undisputed fact on summary judgment." (Def. Br. at 4.) But, *KangaROOS* does not hold that joint liability by individuals or the willfulness required under 15 U.S.C. § 1117(c)(2), can *never* be established as a matter of law. *Cf. Microsoft Corp. v. Rechanik*, 249 Fed. Appx. at 478 (upholding grant of summary judgment for plaintiff "because [plaintiff] presented overwhelming and unrefuted evidence that [the individual defendant] was personally liable for infringing Microsoft's copyrights and trademarks"). In fact, *KangaROOS* was not even addressing a claim for joint liability for trademark infringement or damages under § 1117. Rather, the Court in *KangaROOS* was addressing a claim for fraud. And, the court held that "intent of the actor is a factor to be considered in judicial determination of fraud or inequitable conduct, and that intent was not *on this record* amendable to summary [judgment]." *Id*. at 1577.[4]

Courts have made plain that if the record justifies it, willfulness may be determined at the summary judgment stage. *Skouras v. United States*, 26 F.3d 13, 14 (2d Cir. 1994). Consistent with that recognition, courts in this circuit and elsewhere have granted summary judgment on

---

[4] Defendants reliance on *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) and *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473 (1962), is similarly misplaced. *Feltner* holds that a claim for statutory damages for copyright infringement under § 504(c) is a suit at law to which the Seventh Amendment applies. *Feltner*, 523 U.S. at 342. The Seventh Circuit has explained, "[t]his does not mean, however, that a jury must resolve every dispute. When there are no disputes of material fact, the court may enter summary judgment without transgressing the Constitution." *BMG Music v. Gonzalez*, 430 F.3d 888, 892 (7th Cir. 2005) (citing *Fidelity & Deposit Co. of Maryland v. United States,* 187 U.S. 315 (1902); *Galloway v. United States,* 319 U.S. 372 (1943); *Gasoline Prods. Co. v. Champlin Refining Co.,* 283 U.S. 494 (1931)). Moreover, numerous Courts have held that *Celotex*, *PepsiCo*, and *Tops Markets*, among other cases, effectively have overruled a large number of earlier cases, including *Poller*, that indicated that summary judgment was disfavored. *See Alexander v. Phoenix Bond & Indem. Co.*, 149 F. Supp. 2d 989, 997 (N.D. Ill. 2001); *Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 344, n.38 (S.D.N.Y. 2009).

willfulness (including based on recklessness or willful blindness) in trademark and copyright cases where the record has justified it. *See, e.g., Lorillard Tobacco Co. v. A&E Oil, Inc.*, 503 F.3d 588, 595 (7th Cir. 2007) ("*A&E Oil*") (holding § 1117 applied because there was "no genuine issue of material fact regarding the [defendants'] knowledge or willful blindness to the presence of counterfeit cigarettes"), overruled in part on other grounds by *McCarter v. Retirement Plan For Dist. Managers of Am. Family Ins. Grp.*, 540 F.3d 649, 654 (7th Cir. 2008); *Microsoft Corp. v. Rechanik*, 249 Fed. Appx. at 479 (affirming grant of summary judgment where defendant "admitted at his deposition that he purchased the products from unauthorized distributers, did not ask whether they were authentic, and did not examine them to satisfy himself that they were not counterfeit. At best, [his] 'ostrich-like' business practices amount[ed] to willful blindness . . . ."); *Microsoft Corp. v. CMOS Techs*, Inc., 872 F. Supp. 1329, 1340 (D.N.J. 1994) (awarding treble damages under § 1117(b) on summary judgment: defendants' sales of counterfeits were made "at the very least with 'willful blindness'"); *Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 568 (S.D.N.Y. 1995) (Sotomayor, J.) (granting summary judgment for willful counterfeiting where defendants' conduct demonstrated, at the very least, "reckless disregard for plaintiffs' copyrights"); *Fendi*, 689 F. Supp. 2d at 610; *Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 329 (S.D.N.Y. 2003).

Most surprising is Defendants reliance on *A&E Oil*, 503 F.3d at 595 (Def. Br. at 5), case where the defendants appealed the District Court's grant of summary judgment for plaintiffs in an infringement case involving Newport cigarettes and another case where defendants had "ostrich-like" business practices. The District court in *A&E Oil* went even further than the court in *Microsoft*, and held that the defendants acted with knowledge (*Lorillard Tobacco Co. v. A&E Oil, Inc.*, No. 03 C 5833, 2006 WL 1430774, at *5 (N.D. Ill. May 16, 2006) ("*A&E Oil II*"), and

the Seventh Circuit affirmed. In what could not be a coincidence, in making its decision, the District Court noted that "the Individual Defendants ignored several warning signs, such as their association with *Umar*, [and] that the Newports for sale at A&E might have been counterfeit." *A&E Oil II*, 2006 WL 1430774, at \*5. As in *A&E Oil*, many of the Defendants here bought counterfeit TOP product from a man named *Umar* in equally suspicious circumstances. D.I. 187, Ex. E at 33:19-35:15; 43:22-45:1; 54:17-55:6; D.I. 187, Ex. D at 18:6-19:13.) As in *A&E Oil*, this Court should grant summary judgment for Plaintiffs and find that Defendants acted with knowledge or willful blindness. *See e.g., Id.* at \*5.[5]

Similarly, in affirming the District Court's decision to grant summary judgment in *A&E Oil*, (*A&E Oil II*, 2006 WL 1430774) the Seventh Circuit in *A&E Oil* held: "'we are not constrained to accept denials supported by a mere scintilla of evidence. Such bare denials – for example, where the defendant's alleged ignorance amounts to willful blindness, or where the owner's claims of ignorance are 'inconsistent with the uncontested facts' – are insufficient to create a genuine triable issue." *A&E Oil*, 503 F.3d at 594 (citing *United States v. 16328 S. 43rd E. Ave., Bixby, Tulsa County, Okla.,* 275 F.3d 1281, 1285 (10th Cir. 2002) (affirming grant of summary judgment to United States in a forfeiture case based on legal conclusion that facts showed the defendant knew of and consented to criminal activities on property); *United States v. One Parcel of Prop., Located at 755 Forest Rd.,* 985 F.2d 70, 72-73 (2d Cir. 1993) (affirming grant of summary judgment to United States in a forfeiture case based on evidence establishing owner's willful blindness to drug activity on property).

As explained in more detail in Plaintiffs' Opening Memorandum, Opposition to the Individual Defendants' Motion for Summary Judgment and *supra* Part I(A), there is ample

---

[5] In addition, in *A&E Oil*, the District court granted, and Seventh Circuit affirmed, the award of attorney's fees. *A&E Oil*, 503 F.3d at 595.

Case: 1:11-cv-04460 Document #: 213 Filed: 09/06/13 Page 20 of 30 PageID #:3073

evidence to show -- at the very least -- that the Defendants turned a blind eye to the circumstances that indicated they were acquiring for resale, through the Corporate Defendants, cigarette rolling papers that were not authentic TOP-brand merchandise. By engaging in shady, undocumented transactions out of the backs of vans or making off-the-books, below market "barters" for merchandise that then all trace of which is spoliated, and continuing to trade in such goods after being put on notice that the products they are selling might be counterfeit, shows that Defendants knew or should have known that their businesses were trafficking in counterfeit merchandise.

In addition, the Defendants' contumacy in discovery and spoliation of evidence in this proceeding further support a finding of willfulness. *Lorillard Tobacco Co. v. Montrose Wholesale Candies and Sundries, Inc.*, Nos. 03 C 5311, 03 C 4844, 2007 WL 2580491, at *2, n.2 (N.D. Ill., Sept. 10, 2007) ("*Montrose*") ("Quite apart from the statutory support for a finding of willfulness, the defendants' obstruction and contumacy in discovery provide circumstantial evidence of willfulness."). As detailed in Plaintiffs' multiple motions to compel discovery and/or for sanctions, the Defendants here have been both obstreperous and less than forthright in responding to discovery in this litigation. (*See* D.I. 59, 100, 110.) This Court has twice granted motions to compel against Defendants for failing to make disclosures or produce documents (D.I. 73, 103), and also entered an award of sanctions against Defendants MCC and Choudhri for discovery violations that included willful and bad faith spoliation of evidence. (*See* D.I. 136, 149.) As the court in *Montrose* noted, "[u]nder [Federal] Rule [of Evidence] 404(b), evidence of subsequent conduct may be admissible to show antecedent intent." 2007 WL 2580491 at *2, n.2.

### III. Summary Judgment Is Appropriate As To Plaintiffs' Federal & State Dilution Claims.

To prevail on a claim of federal trademark dilution, Plaintiff must show that: (1) the TOP Marks are famous; (2) Defendants adopted the mark after the TOP Mark became famous; (3) Defendants' use of the mark is likely to cause dilution of the TOP Marks; and (4) Defendants are using the mark in commerce for commercial purposes. *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 466 (7th Cir. 2000), (citing 15 U.S.C. § 1125(c)(1)). Defendants do not challenge whether the Defendants adopted the mark after the TOP Mark became famous or that Defendants are using the mark in commerce for commercial purposes.

#### A. Defendants' Reliance On *North Atlantic* Is Misplaced.

Rather, Defendants erroneously argue that Plaintiffs cannot establish that Defendants are liable for trademark dilution under either the Lanham Act, 15 U.S.C. § 1125(c) (Count IV), or the TRPA, 765 Ill. Comp. Stat. 1036/65(a) (Count VII), because the Court in *Top Tobacco, L.P. v. North Atlantic Operating Co*., No 06 C 950, 2007 WL 118527, at *8 (N.D. Ill. Jan. 4, 2007) ("*North Atlantic*"), "has already held, as a matter of law, that Plaintiffs' mark is not famous, and therefore does not qualify for protection under the anti-dilution statute. (Def. Br. at 21.) Not so.

The Court in *North Atlantic* was only addressing Plaintiffs' mark of the word "TOP" (registration number 2,739,466, issued on July 22, 2003, for the TOP word mark used in conjunction with smoking tobacco; and registration number 2,831,105, issued on April 13, 2004, for the TOP word mark used in conjunction with cigarette rolling papers). *Id* at **3-5. More specifically, in *North Atlantic*, Plaintiffs made a claim for dilution, arguing that their "TOP" mark was being diluted through the use of the term "top" in the sale of the defendants own product which used the phrase "Fresh–Top Canister" on one of its tobacco products. *Id*. at *7. Here, on the other hand, Plaintiffs' seek to protect its ***design*** marks which have been diluted

through Defendants purchase and sale of counterfeit TOP product. (*See* D.I. 189.) This distinction is important because, not only was the Court in *North Atlantic* not addressing Plaintiffs design marks when deciding the Plaintiffs' dilution claim in that case, when the Seventh Circuit reviewed the District Court's decision in *North Atlantic*, it held "[t]here can be no doubt that TOP is an old and recognized brand in the loose-cigarette-tobacco market." *Top Tobacco, L.P. v. North Atl. Operating Co*, 509 F.3d 380, 383 (7th Cir. 2007). The Seventh Circuit further held that "Top Tobacco and its predecessors have been in this segment of the cigarette market for more than 100 years, and the mark TOP ®, printed above a drawing of a spinning top, is well known among merchants and customers of cigarette tobacco." *Id.* at 381. Thus, while the Court in *North Atlantic* may have held that the word "TOP" was not "famously distinctive" and thus could not enjoy protection, it did ***not***, as Defendants incorrectly argue, rule that Plaintiffs' design marks are not famous and should not enjoy protection. On the contrary, the Seventh Circuit impliedly held Plaintiffs' design marks ***should*** enjoy such protection. *Id.* at 383.

Because Plaintiffs have established the TOP Marks are inherently distinctive and famous throughout the United States (Plaintiffs' TOP Tobacco, L.P. and Republic Tobacco, L.P.'s Statement of Material Facts Supporting Summary Judgment, ("SOF") ¶¶ 22-31), and because Defendants do not challenge that: (i) Plaintiffs indisputably own the TOP Marks; (ii) the TOP Marks are well known and have been used continuously for the last 100 years (*id.* ¶ 26); (iii) Defendants began making commercial use of the mark in commerce by selling and/or offering to sell counterfeit TOP product; and (iv) such use was done well after the TOP Marks became famous (*id.* ¶ 47-67), Plaintiffs' are entitled to summary judgment on their claims for dilution against all Defendants.

15

## B. The Factors Demonstrating Dilution By Blurriness Between Marks Weigh In Plaintiffs' Favor.

Moreover, contrary to Defendants' argument that Plaintiffs cannot establish dilution through blurring because "the marks at issue here appear on the same type of product" (Def. Br. at 22), courts have held dilution can be established even where the marks were identical and used on similar goods. *See e.g., Lorillard Tobacco Co. v. Ahmad's Pizza, Inc.*, 866 F. Supp. 2d 872, 878-879 (N.D. Ohio 2012) ("*Ahmad's Pizza*") ("the primary concern in blurriness actions is preventing the 'whittling away of an established trademark's selling power through its unauthorized use by others.'") (internal citations omitted); *see also Audi AG v. D'Amato*, 381 F. Supp. 2d 644, 665 (E.D. Mich. 2005) (holding that "because identical marks were used on similar goods," direct evidence of actual dilution will not be necessary and dilution was established). In *Ahmad's Pizza*, for example, the Court found that the defendant was liable for dilution by blurring, explaining that because "the defendant offered for sale counterfeit cigarettes with marks nearly identical to Lorillard's famous marks[,] [t]his certainly contributed to the 'whittling away' of the trademarks' selling power." *Ahmad's Pizza*, 866 F. Supp. 2d at 879. Here, as in *Ahmad's Pizza*, it is undisputed that Defendants were using marks identical to the famous marks owned by Plaintiffs (*id.* at 877); thus, there is no doubt the factors demonstrating dilution by blurriness between marks weigh in Plaintiffs' favor.

## C. The Evidence More Than Sufficiently Demonstrates Defendants Are Liable For Dilution Of The TOP Marks.

Finally, despite Defendants argument that Plaintiffs cannot establish dilution through tarnishing because "Plaintiffs have not submitted evidence that any use of the mark is likely to cause dilution, let alone evidence proving actual dilution" (Def. Br. at 22), the Seventh Circuit has firmly established that "proof of a mere 'likelihood of dilution' is sufficient to satisfy the

'causes dilution' element required." *Eli Lilly & Co.*, 233 F.3d at 468.[6] "Likelihood of dilution is established when defendants have distributed a counterfeit product of inferior quality to the genuine product." *Johnson & Johnson v. Azam Intern. Trading*, No. 07–cv–4302, 2013 WL 4048295, at **10-11 (E.D.N.Y. Aug. 9, 2013) (citing *Johnson & Johnson Consumer Cos., Inc. v. Aini,* 540 F. Supp. 2d 374, 394–95 (E.D.N.Y. 2008) (finding defendants liable, on summary judgment, for selling counterfeit products that "tarnish[ed] Plaintiff's mark because of the inferior quality of Defendants' products"); *see also S & H Indus, Inc. v. Selander*, Civil No. 3:11–CV–2988, 2013 WL 1131077, at *7 (N.D. Tex. 2013) ("Tarnishing addresses instances in which a defendant uses a trade name similar to that of the plaintiff on products that are markedly inferior or of a different quality and nature than those of the plaintiff.") (internal citations omitted).

Here, the record supports that Defendants' use of Plaintiffs' identical marks on products that do not meet Plaintiffs' rigorous manufacturing and quality controls have tarnished the reputation of the TOP Marks. (SOF ¶ 29.) This alone, is sufficient to demonstrate Defendants are liable for dilution of the TOP Marks. *See Azam Intern. Trading*, 2013 WL 4048295, at *11.

## IV.    Plaintiffs Are Entitled To Some Statutory Damages As A Matter of Law.

The alternative availability of statutory damages was added to the Lanham Act in 1996

---

[6] To the extent actual dilution is required, the counterfeit products bought and sold by Defendants here bore an identical mark to Plaintiffs' marks. (*See* D.I. 57 at ¶57.) The Supreme Court has held that, in such a circumstance, actual dilution can be reliably proven. *See Moseley v. Secret Catalogue, Inc.,* 537 U.S. 418, 434 (2003) ("Direct evidence of dilution . . . will not be necessary if actual dilution can reliably be proved through circumstantial evidence – the obvious case is one where the junior and senior marks are identical."); s*ee also Lorillard Tobacco Co. v. Van Dyke Liquor Market, Inc*., 471 F. Supp. 2d 822, 833 (E.D. Mich. 2007) ("*Van Dyke*") (granting summary judgment as to liability on Plaintiff's dilution claim under 15 U.S.C. § 1125(c), holding that, "[a]s a result of Defendant selling cigarettes that used marks identical to the registered marks, the Court finds that the final element of the dilution analysis is established because the counterfeit marks were very similar and were used on similar goods. Defendant's use of the mark on counterfeit cigarettes dilutes the quality of Plaintiff's mark because it diminishes the ability of the mark to identify and distinguish the goods.") (citing *Audi*, 381 F. Supp. 2d 664-65).

"precisely because of the reality that [actual] damages are difficult to prove in counterfeiting cases, as counterfeiters either fail to keep records or destroy them in order to conceal the magnitude of their infraction." *Montrose*, 2007 WL 2580491, at *2.[7]  That is precisely the case here, where none of the Gas Station Defendants kept contemporaneous records of their purchases and sales of TOP-brand cigarette rolling papers, Defendant MCC made no records of the purchase and sale of counterfeit papers from Country Bright, and Defendant Choudhri destroyed his inventory of TOP-brand rolling papers to deny Plaintiffs any ability to assess the true extent of MCC's trafficking in counterfeit goods. *Montrose*, 2007 WL 2580491, at *3 ("In the end, the defendants' bridling at the awarding of statutory damages is ironic, as the uncertainty of damages is a product of their subterfuge. Thus, they can hardly be heard to complain.").

In their Response, Defendants argue they have a "Seventh Amendment right to a jury determination on the issue of ***any*** statutory damages that could be awarded in this case."  (Def. Br. at 15.) (emphasis added).  Not so. As an initial matter, when a plaintiff requests only the minimum statutory damages, the Seventh Circuit has concluded that the issues of damages can be properly decided on summary judgment.  *See BMG,* 430 F.3d at 892; *see also GoPets Ltd. v. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011) ("we hold that there is no right to a jury trial when a judge awards the minimum statutory damages") (citing *BMG* with approval).  Accordingly, to the extent this Court finds that the Defendants are liable to Plaintiffs, this Court can and should also find that Plaintiffs are entitled to an award against each Defendant of the statutory damages permitted under § 1117(c)(1), *i.e.* "not less than $1,000 and no more than $200,000 per

---

[7] Section 1117(c)(1) of the Lanham Act allows statutory damages of "not less than $1,000 and no more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1).  But, "if the court finds that the use of the counterfeit mark was willful," Section 1117(c)(2) allows a statutory damages award of up to $2,000,000 per counterfeit mark. 15 U.S.C. § 1117(c)(2).

counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1).

Next, as explained in Part I(A), *supra*, the record establishes that the Defendants acted willfully. In addition, as noted above, the Defendants' contumacy in discovery and spoliation of evidence in this proceeding further support a finding of willfulness. *Montrose*, 2007 WL 2580491, at *2. Therefore, this Court can and should find that the Plaintiffs are entitled to enhanced statutory damages as a matter of law under Section 1117(c)(2), which allows an award of up to $2,000,000 per counterfeit mark. 15 U.S.C. § 1117(c)(2). *See Montrose*, 2007 WL 2580491, at *2. Thus, the only issue for a jury would be the actual dollar amount to which Plaintiffs are entitled (somewhere between the statutory minimum and maximum).

That said, if the Court grants summary judgment in favor of Plaintiffs on all questions of liability, finds Defendants' conduct to have been willful, awards Plaintiffs permanent injunctive relief and reasonable attorneys' fees, and finds that Plaintiffs are entitled to the minimum amount of statutory damages available under Section 1117(c)(1) against all Defendants other than MCC, then the only remaining question for trial by jury would be the amount of statutory damages Plaintiffs would be entitled to against Defendant MCC under Section 1117(c)(2). In that instance, Plaintiffs would be willing to forgo their request for maximum damages as to all Defendants other than MCC, and proceed to trial solely to determine the amount of maximum statutory damages they are entitled to under Section 1117(c)(2) against MCC.

## V.     Plaintiffs' Request for Permanent Injunction is Not "Premature."

Although the record shows that Defendants continued to sell counterfeit TOP product after notice of Plaintiffs' claims (D.I. 187, Ex. D at 56:24-59:1; 58:13–15; D.I. 187, Ex. O at 112:16–113:16; D.I. 187, Ex. H; D.I. 187, Ex. M at 114:22-116:20; D.I. 187, Ex. E at 99:11–17), and although one would expect an infringer would not need to be told to stop selling counterfeit

product once they were caught doing so, the Defendants characterize as "premature" Plaintiffs' request that the Court order them to stop selling counterfeit TOP product through a permanent injunction. (Def. Br. at 22.) Because Defendants' do not challenge injunctive relief on any other grounds, any additional arguments as to why a permanent injunction should not be granted are waived. *See Wojtas*, 477 F.3d at 926; *Cincinnati Ins. Co.,* 260 F.3d at 747. And, for the reasons stated herein, because the Court may grant summary judgment in Plaintiffs' favor on all other grounds, Plaintiffs' request for permanent injunctive relief is hardly premature and should be granted. (*See* Pl. Memo. at Part IV(B).)

## VI.    Plaintiffs Are Entitled To An Award Of Their Reasonable Attorneys' Fees.

Defendants argue Plaintiffs are not entitled to an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) because "Plaintiffs' have provided no evidence at all that could be construed to support a finding that the defense in this case is 'objectively unreasonable.'" (Def. Br. at 23-24.) As explained in Part IV(C) of Plaintiffs' Opening Memorandum (at 15), under 15 U.S.C. § 1117, attorneys' fees are expressly provided for in "exceptional" cases. What constitutes an "exceptional" case is not defined in the statute, but case law suggests that attorneys' fees are warranted when the defendants' infringing acts are characterized as willful, fraudulent, or malicious.[8] Defendants' conduct in this case, as set forth above, amounts to willful infringement, and, therefore, a finding that this case is "exceptional" is warranted. *See Otis Clapp*, 754 F.2d at 746-47 (affirming award of attorney fees for plaintiff on its trademark claim).

---

[8] *See Otis Clapp & Son, Inc.*, 754 F.2d 738, 746 (7th Cir. 2008); *TE-TA-MA Truth Foundation-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 258 (7th Cir. 2004) (finding that a case is "exceptional" under the Lanham Act is not limited to willfulness, but can be found where the defendant's litigation conduct is oppressive).

In addition, the cases relied upon by Defendants in opposing an award of attorney's fees are each distinguishable here. Significantly, none of the cases award or deny attorney's fees to a plaintiff in a Lanham Act case. Rather, the cases discuss an award of attorney's fees when a *defendant* has successfully defended against a plaintiff's suit, and therefore provide no meaningful analysis for an award of attorney's fees to a successful plaintiff. *See Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 966 (7th Cir. 2010), *Specht v. Google, Inc.*, 805 F. Supp. 2d 551 (N.D. Ill. 2011), *Leonel & Noel Corp. v. Central Beer Import & Export, Inc.*, No. 08 C 5556, 2012 WL 266370 (N.D. Ill. Jan 30, 2012). Moreover, in *Nightingale*, the Seventh Circuit noted that the standard for a plaintiff that is seeking an award of attorney's fees as a prevailing party is "whether the defendant had lacked a solid justification for the defense or had put the plaintiff to an unreasonable expense in suing." *Nightingale*, 626 F.3d at 961. Specifically:

> [U]nder the Lanham Act [a case] is 'exceptional,' in the sense of warranting an award of reasonable attorneys' fees to the winning party . . . if the losing party was the defendant and had no defense yet persisted in the trademark infringement . . . for which he was being sued, in order to impose costs on his opponent.

*Id.* at 963-64.

Here, as explained above, the record supports that, despite notice of Plaintiffs' claims, the Defendants persisted in selling counterfeit TOP product. (*See* Part I(A) *supra*.) Moreover, the Defendants have even gone so far as to object to Plaintiffs' request that the Court order them to stop selling indisputably counterfeit TOP product through a permanent injunction. (*See* Part IV, *supra*.) Accordingly, even under the *Nightingale* standard, Plaintiffs' are entitled to an award of attorneys' fees.

Case: 1:11-cv-04460 Document #: 21-1 Filed: 09/06/13 Page 28 of 29 PageID #:3204

## **CONCLUSION**

Based on the foregoing, Plaintiffs are entitled to summary judgment as to all claims against Defendants.  Moreover, Plaintiffs are entitled to an award of damages on their claims due to Defendants' willfulness with regard to their sale and/or offering for sale of counterfeit TOP product pursuant to 15 U.S.C. § 1117(c), plus reasonable attorneys' fees, and entry of a permanent injunction prohibiting the Defendants from selling products bearing counterfeit TOP marks.  Accordingly, Plaintiffs request entry of judgment against the Defendants, as follows:

- Finding all Defendants liable for each of the claims asserted against them;

- Finding that Defendant MCC's actions were "willful" for purposes of 15 U.S.C. § 1117(c)(2);

- Reserving for trial the question of the amount of statutory damages against Defendant MCC, up to the maximum amount of $2 million, per mark, pursuant to 15 U.S.C. § 1117(c)(2);

- Awarding Plaintiffs the minimum statutory damages against each of the other Defendants, of $1,000 per mark, per defendant, pursuant to 15 U.S.C. § 1117(c)(1), obviating the need for a jury trial as to those Defendants;

- Granting to Plaintiffs a permanent injunction enjoining all Defendants from any further infringement upon Plaintiffs' protected marks; and

- Finding that this is an exceptional case that warrants an award to Plaintiffs of their reasonable attorneys' fees, to be established.

- Alternatively, if the Court determines the foregoing relief is not warranted at the summary judgment stage, Plaintiffs reserve the right to pursue at trial the maximum statutory damages against each Defendant, up to the maximum amount of $2 million, per mark, pursuant to 15 U.S.C. § 1117(c)(2).

**Dated: September 6, 2013**                    **Respectfully submitted,**


TOP TOBACCO, L.P. and REPUBLIC
TOBACCO, L.P.

/s/ Martin T. Tully
By one of their attorneys
Martin T. Tully
Dara Chevlin Tarkowski
Aharon S. Kaye
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
Telephone: (312) 902-5200